IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERTA GAINER,

                               Plaintiff,

v.

UNITED AUTOMOBILE, AEROSPACE,
AGRICULTURAL IMPLEMENT WORKERS
(UAW) REGION 9 and
GENERAL MOTORS DEPARTMENT OF UAW

                               Defendants.

_____

**REPORT AND RECOMMENDATION**

08-CV-00501(S)(M)

        Before me is plaintiff Roberta Gainer's motion for leave to file a Second Amended Complaint [76].[1] For the following reasons, I recommend that this motion be granted in part and denied in part.[2]

## BACKGROUND

        On July 7, 2008 plaintiff commenced this action *pro se* against the "United Automobile Aerospace Agricultural Implement Worker (UAW) Region 9" ("UAW Region 9") alleging failure to hire, failure to promote and retaliation claims under Title VII of the Civil Rights Action of 1964 (42 U.S.C. §§2000e to 2000e-17) ("Title VII") and the New York State

---

    [1]     Bracketed references are to the CM/ECF docket entries.

    [2]     Whether a motion for leave to amend is treated as dispositive depends, in part, on the disposition of the motion. "[D]enial of a motion to amend is dispositive in situations where the denial is based on futility, because such a motion is analyzed under the same standard as a motion to dismiss for failure to state a claim or a motion for summary judgment, both of which are dispositive motions." Children First Foundation, Inc. v. Martinez, 2007 WL 4618524, *4 (N.D.N.Y. 2007), cert. of appealability denied, 2008 WL 25574433 (N.D.N.Y. 2008). However, "it is apparent that permitting an amendment cannot dispose of a claim or defense", and as such, is considered non-dispositive. Youngman v. Robert Bosch LLC, ___F. Supp.2d___, 2013 WL 527269, *9, n.1 (E.D.N.Y. 2013). Therefore, because I recommend denying plaintiff's motion in part, I will treat the entire motion as being dispositive.

Human Rights Law (N.Y. Exec. Law §§290 to 297) ("NYSHRL"). Complaint [1]. In May 2009 plaintiff filed an Amended Complaint [13] adding the "General Motors Dept. of UAW" as a defendant [13]. The Amended Complaint alleges that

> "I have been employed by General Motors working for the Intl
> United Automobile Aerospace and Agricultural implements Workers
> of America (UAW) Region 9 as a special assigned internationally
> appointed representative since 1999. . . . I have consistently been denied an
> International Representative positions in favor of approximately 24
> Caucasians . . . . I believe I was not hired for the International Representative
> position because of my race and gender . . . . Since filing my charge of
> discrimination, I have suffered retaliation from the UAW". Amended Complaint
> [13], ¶19.

The Amended Complaint attaches several items of correspondence indicating that plaintiff's special assignment was with the UAW-GM Center for Human Resources ("CHR"). As a result of this alleged conduct, plaintiff's Amended Complaint continued to assert causes of action for failure to hire, failure to promote and retaliation, in violation of Title VII and the NYSHRL Id.

In moving for dismissal of the Amended Complaint the UAW Region 9 argued, *inter alia*, that plaintiff:

> "is not now, nor has she been, an employee of the UAW, Region 9. . . .
> Instead, she works for GM as a [Special Assigned Representative
> ("SAR")] . . . . SAR positions are a creation of the Agreement between
> the UAW and GM . . . . The Agreement provides for the establishment
> and funding of the [CHR], a jointly administered Taft-Hartley Fund that
> is a separate and distinct entity from either the UAW or GM . . . . SAR
> positions are established, controlled, administered and eliminated by
> this Taft-Hartley Fund, the CHR . . . . Individuals assigned by the CHR
> to SAR positions remain employees of GM who pays their wages and
> benefits . . . . As a Taft-Hartley Fund, the CHR is administered by a
> Board of Trustees assembled from an equal number of representatives
> from GM and the UAW . . . . The Plaintiff during all relevant times in
> this lawsuit has never been employed by the UAW . . . . Plaintiff
> worked under the control and administration of the CHR, not the
> UAW." Defendants' Memorandum of Law [16-4], pp. 4-5.

On June 12, 2011, Judge Skretny granted the motion to dismiss in part, leaving only plaintiff's failure to hire claims [21].[3] In dismissing plaintiff's claims for retaliation, Judge Skretny held that "Plaintiff does not allege that the Union breached its duty of fair representation, but rather that the Union retaliated against her for filing a lawsuit by eliminating her position . . . . *Plaintiff does not allege that she was an employee of UAW*. Thus, she has not stated a cognizable claim for retaliation and Plaintiff's claim is dismissed." Id., p. 9 (emphasis added). Thereafter, defendants answered [22] the Amended Complaint, stating:

> "Defendants, the United Autoworkers Aerospace and Agricultural Implement Workers (UAW) Region 9 *and UAW-GM Center for Human Resources, presumed to be referenced in the Amended Complaint as 'General Motors Department of UAW'* for their Answer to the Amended Complaint . . . ." Id., Introductory Paragraph (emphasis added).[4]

On July 8, 2011 plaintiff filed her first motion for reconsideration of that portion of Judge Skretny's Decision and Order dismissing her retaliation claim, arguing that "[t]he UAW . . . shares a 'dual employer relationship' with General Motors . . . . Both the UAW and GM are the 'employer' of several hundred people working for the UAW-GM Center for Human Resources . . . . The UAW-GM CHR is a separate and distinct entity from the labor union UAW and the company GM . . . . I was hired by the UAW-GM CHR as a UAW Special Assigned." Gainer Affirmation [25], ¶4. This motion was denied on August 9, 2011 [27].

---

[3] The motion to dismiss the Amended Complaint appears to have been only filed on behalf of the UAW Region 9 [16] and Judge Skretny's Decision and Order references a lone defendant [21].

[4] This correction is referenced in some of defendants' later submissions. *See e.g.*, Boreanaz Declaration [53-1], ¶1.

On August 25, 2011 Ardra O'Neal, Esq. entered an appearance on plaintiff's behalf. Ms. O'Neal then filed a notice and amended notice of appeal [32, 33] of Judge Skretny's August 9, 2011 Order denying plaintiff's motion for reconsideration [27], which were later voluntarily dismissed [45].

Following a preliminary pretrial conference with counsel for both parties, I entered a Case Management Order [31] dated August 30, 2011, requiring that all motions to join other parties and to amend pleadings to be filed by October 17, 2011, and fact discovery to be completed by March 30, 2012. Id., ¶8. Id., 6. Although the fact discovery deadline was later extended to June 28, 2012 (Amended Case Management Order [48], ¶1), the deadline for amending pleadings expired without either party seeking this relief or extending this deadline.

Shortly before the June 28, 2012 deadline for completion of fact discovery, I received a letter dated June 18, 2012 from plaintiff indicating that she had terminated her counsel [49]. At the June 29, 2012 proceeding, plaintiff confirmed that she was representing herself *pro se* [56] and, at that time, I held the deadlines of the Amended Case Management Order [48], including the deadline for completion of fact discovery, in abeyance while I addressed the parties' discovery disputes. Id.

On August 7, 2012 plaintiff filed her second motion for reconsideration of Judge Skretny's Decision and Order dismissing her retaliation claim, arguing, *inter alia*, that the motion to dismiss was only filed by one of the two defendants and that the decision "inadvertently did not separate the two defendants or the claims against them jointly and individually; reacted to the motion as if it was coming from one defendant" [61], p. 3 of 13. She also explained that she named the General Motors Department of UAW as a defendant because it was operating as a

"joint employer of the UAW-GM Center for Human Resources (CHR), a joint labor management committee between the UAW and General Motors". Id., pp. 3-4 of 13. This motion was denied on October 18, 2012 [71].

In addition to her second motion for reconsideration, plaintiff moved for leave to amend the caption to add "Calvin Rapson, UAW Vice President, GM Dept. and UAW-GM Center for Human Resources" as defendants [60]. Judge Skretny denied this motion on October 18, 2012, reasoning that:

> "Plaintiff does not seek to correct or modify the form of the caption, but rather, seeks to add additional defendants. The proper avenue for the relief requested, however, is a Motion to Amend the Complaint, not a Motion to Amend the Caption. But even construing this motion liberally as a Motion to Amend the Complaint, Plaintiff has offered no explanation or cause to amend the Complaint under Rule 15, nor has she complied with Local Rule 15" [70].

Plaintiff now moves for leave to file a Second Amended Complaint, replacing defendant "General Motors Department of UAW" with "General Motors Department of UAW, Co-Director, UAW-GM Center for Human Resources (CHR)" [76-1].[5] The proposed Second Amended Complaint [76-1] is much more detailed than the Amended Complaint [13], alleging that plaintiff began her employment with GM LLC in 1978 as an assembler, and is a member of UAW Region 9. Id., ¶¶16-18. In January 1999 she was "contacted by the UAW regarding a vacancy for the position of UAW Special Assigned at the [CHR]", which is a "joint corporate entity between General Motors Department of the UAW and GM LLC . . . established . . . as a separate and distinct entity from UAW . . . and GM LLC". Id., ¶¶24-25. Plaintiff alleges that

---

[5] It is unclear why this proposed amendment is different from plaintiff's earlier motion to amend the caption [60].

"[t]he General Motors Department of UAW is the collective bargaining agent for those employed by GM LLC" and that "General Motors Department of the UAW. . . is the sole UAW department that is partnered with GM LLC to make up the joint entity UAW-GM CHR". Id., ¶¶31-32.

According to plaintiff, the top two officers of the CHR are "the UAW Co-Director and GM Co-Director". Id., ¶27. She alleges that when she began working at the CHR, her wages and benefits were paid by CHR and that her work activities were controlled by "the UAW Co-Director of UAW-GM CHR or by an authorized UAW designee". Id., ¶¶ 39, 40. In 2003, CHR began operating out of the UAW Region 9 office. Id., ¶45. At this time, she began applying for vacancies with the UAW, but they allegedly only hired Caucasians (mostly males). Id., ¶¶46-55. After she commenced this suit in July 2008, plaintiff was advised by "UAW staff" in February 2009 that she was terminated as a Special Assigned employee and directed to return to the Tonawanda Engine plant as an assembler, resulting in a 33% reduction in her weekly wages. Id., ¶¶71-79.

In addition to her failure to hire claims against the UAW Region 9 (First - Fourth Causes of Action), the proposed Second Amended Complaint [76-1] alleges that the UAW Region 9 (Fifth - Sixth Causes of Action) and the "General Motors Department of UAW, Co-Director, UAW-GM Center for Human Resources (CHR)" (Eleventh and Twelfth Causes of Action) retaliated against for her complaints of discrimination, in violation of Title VII and the NYSHRL, and that the UAW Region 9 has "discriminatory employment hiring practices", in violation of Title VII and the NYSHRL (Seventh - Tenth Causes of Action).

Ignoring the allegations plainly set forth in plaintiff's proposed Second Amended Complaint [76-1], defendants mischaracterize it as adding only "two . . . causes of action against

the new proposed defendant, the UAW-GM Center for Human Resources", which "appear[s] to encompass all of the proposed, substantive changes contained in Plaintiff's proposed second Amended Complaint." Defendants' Memorandum of Law [79], pp. 3-4, p. 14 ("there is nothing new in the proposed Second Amended Discrimination Complaint other than naming the CHR as a party and asserting retaliation claims against it").[6]

Based upon this interpretation of the proposed Second Amended Complaint [76-1], defendants oppose plaintiff's motion for leave to amend, arguing 1) that the amendment would be futile since the claims of retaliation have already been dismissed by Judge Skretny (defendants' Memorandum of Law [79], p. 4); 2) that the court lacks jurisdiction over the claims against the CHR since plaintiff failed to file any complaint of discrimination or retaliation against the CHR with the EEOC (id., pp. 4-7); 3) that plaintiff's failure to previously name the CHR was not a mistake and that amendment at this late stage would prejudice defendants and cause undue delay (id., pp. 7-13); and 4) that the plaintiff's motion is brought in bad faith (id., pp. 13-14).

**ANALYSIS**

**A.      Plaintiff's Proposed Retaliation Claims**

Plaintiff's proposed Second Amended Complaint does not purport to assert a retaliation claim against a new party. It continues to assert retaliation claims against the UAW

---

[6] Defendants also erroneously argue that plaintiff's retaliation claims are alleged in the Sixth and Eighth Causes of Action. Defendants' Memorandum of Law [79], p. 3. I assume that defendants intended to reference all four of plaintiff's proposed retaliation claims. *See* Proposed Second Amended Complaint [76-1], Fifth, Sixth, Eleventh and Twelfth Causes of Action.

Region 9. Proposed Second Amended Complaint [76-1], Fifth and Sixth Causes of Action. It also continues to assert retaliation claims against the existing defendant General Motors Department of UAW, but specifies that it is doing so in its capacity as Co-Director of the CHR. *See* proposed Second Amended Complaint [76-1], ¶¶5, 7. Indeed, plaintiff states that "the General Motors Department of UAW, Co-Director, UAW-GM Center for Human Resources is *not* a new Defendant in this matter. It is synonymous to the second defendant, General Motors Department of UAW named in Plaintiff's Amended Complaint". Plaintiff's Reply Memorandum of Law [80], p. 3 (emphasis added). *See* Plaintiff's Memorandum of Law [78], p. 5 of 5 ("Plaintiff has attempted to cure deficiencies in her Amended Complaint in order to <u>clarify</u> not change the identity of the proper defendants" (emphasis in original)).

"Under the law of the case doctrine, this court adheres to its own decision at an earlier stage of the litigation unless there are cogent or compelling reasons not to, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>Sanders v. Sullivan</u>, 900 F.2d 601, 605 (2d Cir. 1990). However, "[a]pplication of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." <u>In re Crysen/Montenay Energy Co.</u>, 226 F.3d 160, 165 n. 5 (2d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 920 (2001); *see also* Fed. R. Civ. P. ("Rule") 54(b) (providing that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

Plaintiff's proposed Second Amended Complaint [76-1] more clearly sets forth her allegations than did her earlier submissions. However, unless and until Judge Skretny

revisits his dismissal of plaintiff's retaliation claim without granting her leave to replead[7] and his denial of plaintiff's subsequent two motions for reconsideration, they remain the law of the case. Therefore, any argument directed to these earlier decisions should be made to Judge Skretny.

Even if it is determined that plaintiff's retaliation claims alleged in her proposed Second Amended Complaint are not barred by Judge Skretny's prior dismissal, I would still recommend that the motion be denied. "Where, as here, a scheduling order governs amendments to the complaint . . . 'the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.''" Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009), cert. denied, 131 S.Ct. 795 (2010). See Carnrite v. Granada Hospital Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (Arcara, J./Foschio, M.J.) ("[A] party seeking to amend a pleading after the date specified in a scheduling order must first show 'good cause' for the amendment under Rule 16(b); then, if good cause can be shown, the party must demonstrate that the amendment is proper under Rule 15(a)"). "Whether good cause exists turns on the 'diligence of the moving party.'" Id. at 335.

The Second Circuit has repeatedly stated that "a finding of 'good cause' depends on the diligence of the moving party". Parker v. Columbia Pictures Industries, 204 F.3d 326, 340 (2d Cir. 2000); Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003);

---

[7] Although Judge Skretny's Decision and Order granting the Rule 12(b)(6) motion to dismiss plaintiff's retaliation claim did not specify whether this claim was dismissed with or without prejudice, "where a district court does not specify whether its dismissal of an action for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is with or without prejudice, it is presumed that the dismissal is with prejudice." VanBrocklen v. Department of Homeland Security, 2012 WL 2873373, *3 (N.D.N.Y. 2012).

Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009), cert. denied, 131 S.Ct. 122 (2010); Holmes, 568 F.3d at 335 ("Whether good cause exists turns on the diligence of the moving party"); DiGennaro v. Whitehair, 2012 WL 880616, *2 (2d Cir. 2012) (Summary Order) ("Whether a party has established 'good cause' depends upon that party's diligence").

However, in Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229 (2d Cir. 2007), the Second Circuit stated that factors other than diligence may be considered in determining whether "good cause" exists: "According to the principles we discussed in *Parker* . . . the primary consideration is whether the moving party can demonstrate diligence. It is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the [extension] at this stage of the litigation will prejudice defendants." Id. at 244.[8]

Neither plaintiff's diligence nor the prejudice to defendants of permitting this amendment weigh in favor of granting plaintiff's motion. In attempting to excuse her delay in

---

[8] I acknowledge that other judges in this district have concluded that Kassner does not excuse the moving party from having to demonstrate diligence in order to show "good cause". *See* Woodworth v. Erie Insurance Co., 2009 WL 3671930, *3 (W.D.N.Y. 2009) (Siragusa, J.) ("The Court interprets [Kassner] to mean that, even where the moving party has been diligent, a court may nonetheless *deny* a late motion to amend when it would prejudice the non-moving party. The Court does not understand . . . *Kassner* to mean that where the moving party has *not been diligent*, a court many nonetheless grant the motion if it would not prejudice the non-moving party") (emphasis in original); Kodak Graphic Communications Canada Co. v. E.I. Du Pont de Nemours and Co., 2011 WL 6826650, *3 (W.D.N.Y. 2011) (Telesca, J.) ("This Court does not interpret *Kassner* to require . . . that the lack of prejudice to the non-moving party would negate the requirement that the moving party act with diligence"); Mendez v. Barlow, 2008 WL 2039499, *2 (W.D.N.Y. 2008) (Foschio, M.J.) ("For purposes of Rule 16, a showing of good cause requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension . . . . Although the absence of prejudice to the non-moving party is relevant to the exercise of the court's discretion, it does not satisfy the good cause requirement").

bringing this motion, plaintiff relies heavily on her *pro se* status, arguing that "she has in good faith tried to [cure the deficiencies in her Amended Complaint] through the filing of motions for reconsideration . . . each time with no success; not knowing that the proper procedure was to motion the Court to grant leave to file an amended complaint". Plaintiff's Memorandum of Law [78], p. 5 of 5. However, plaintiff ignores the fact that she was represented by counsel during much of the relevant time period, including prior to the expiration of the deadline for amendment of pleadings. [31], ¶6. During this time frame plaintiff's counsel was aware of Judge Skretny's decision dismissing plaintiff's retaliation claim and the denial of plaintiff's first motion for reconsideration, but elected not to file a motion for leave to amend. Nothing precluded plaintiff's counsel from doing so.

In their motion to dismiss the Amended Complaint, Defendants provided a comprehensive explanation of plaintiff's employment *vis-a-vis* the CHR, General Motors and the UAW, allowing plaintiff, even in a *pro se* capacity, to move for leave to amend well before the deadline filing such motions. Plaintiff is bound by her former counsel's failure to timely seek this relief. *See* Scott v. New York City Department of Correction, 445 Fed.Appx. 389, 391, 2011 WL 5176580, *1 (2d Cir. 2011) (Summary Order) ("the magistrate judge did not abuse his discretion in concluding that the apparent negligence of Scott's former attorney was not sufficient to establish 'good cause' for amending the scheduling order under [Rule] 16(b)").

Responding to defendants' allegation of prejudice, plaintiff argues that "there are no changes to parties, claims or theory of [her] case that would warrant a drastic change of direction on the part of the Defendants". Plaintiff's Reply Memorandum of Law [80], p. 8. This argument ignores that the proposed amendment would re-introduce retaliation claims that have

been dismissed from the case for approximately two years, prior to any discovery being conducted. While plaintiff points to the fact that discovery has been held in abeyance, discovery was not stayed until shortly before the fact discovery cutoff. July 2, 2012 Text Order [56].

Plaintiff also argues that it was defendants' counsel that raised this issue by indicating to her that the parties she actually intended to name were UAW Region 9 and the CHR. Plaintiff's Reply Memorandum of Law [80], p. 2, Exhibit 2 (excerpt from a July 12, 2012 letter from defendants' counsel). Dating back to the Answer to the Amended Complaint [22], defendants have made clear that they presumed that plaintiff intended to name the CHR as a defendant Id., Introductory Paragraph. However, this was raised by defendants in the context of plaintiff's remaining claims, and cannot be interpreted as a concession by defendants that the addition of a retaliation claim against CHR was acceptable.

Therefore, I recommend that plaintiff's motion be denied to the extent that it seeks to add the proposed retaliation claims. *See* Proposed Second Amended Complaint [76-1], Fifth, Sixth, Eleventh, and Twelfth Causes of Action.

**B.    Plaintiff's Proposed Remaining Claims**

Since defendants' opposition to plaintiff's motion only addresses the addition of the proposed retaliation claims, I recommend that the balance of plaintiff's motion for leave to amend be granted.

**CONCLUSION**

For these reasons, I recommend that plaintiff's motion for leave to amend [76] be granted consistent with the proposed Amended Complaint, except to the extent that the proposed Amended Complaint [76-1] asserts retaliation claims under Title VII and the NYSHRL. Id., Fifth, Sixth, Eleventh, and Twelfth Causes of Action.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by August 5, 2013 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: July 18, 2013

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge